S06F2079. SWEAT v. SWEAT.

(641 SE2d 1)

HINES, Justice.

Joseph Michael Sweat ("husband") appeals his final judgment and decree of divorce ("decree") entered pursuant to a jury verdict and the denials of his "Motion to Set Aside Judgment," "Motion for New Trial," and "Motion to Partially Amend or in the Alternative Reconsider Decree to Correct Omission of QDRO and as to Retirement Plan

and Alimony Issues" in regard to the decree.[1] For the reasons that follow, the judgments are affirmed and the case is remanded to the trial court for action consistent with the opinion.

1. The jury awarded Stella Sweat ("wife") 43% of the husband's retirement account. The jury did not detail how this division was to be accomplished for the purpose of tax treatment. The parties discussed the use of a Qualified Domestic Relations Order ("QDRO") to attempt to mitigate tax consequences of the transfer. However, the trial court did not provide for a QDRO in the decree.

The husband contends that the trial court erred in failing to do so because he agreed to have a QDRO included in the decree in open court and this constituted a clear stipulation to the QDRO which was binding on the parties. However, the record belies the contention that the parties reached such a stipulation. Indeed, the submitted trial transcript of the on-the-record discussions in regard to the division of the husband's retirement account shows quite the contrary. Even though the husband stated more than once the desire to use a QDRO to pay out the wife's portion of the retirement fund, he also indicated, at various points in the lengthy colloquy among the trial court, the attorneys for the parties, and the husband, that he was not willing and/or able to pay for preparation of the QDRO. And the final word in the matter was that there was no agreement between the parties to utilize a QDRO.[2]

---

[1] The Husband filed an application for discretionary appeal in this Court, which was granted automatically under this Court's pilot project. See *Wright v. Wright*, 277 Ga. 133 (587 SE2d 600) (2003).

[2] The conclusion of the lengthy discussion regarding a QDRO, in relevant part, was the following:

WIFE'S ATTORNEY: So what are we doing?
THE COURT: At this point what you have is a jury verdict that says 57 percent/43 percent. If your client wishes to reduce his tax obligations by doing it by QDRO, then he can do that. If the parties cannot agree, the jury verdict will stand. And 43 percent of his retirement fund as of the value of today will be paid to Ms. Sweat. And any tax consequences that that may cause are whatever tax consequences they cause.
WIFE'S ATTORNEY: I'm sorry, I offered [the QDRO] to them.
THE COURT: I mean, that's the reading of the verdict. Today there's a 57/43 percent split of the retirement fund.
HUSBAND'S ATTORNEY: But they didn't state the figure, what the fund –
THE COURT: It is not their duty to come up with the fact that he can reduce his tax obligations by doing it by a QDRO. That's not the jury's responsibility. They split up the fund. Now to reduce the tax consequences and the fact that there's going to be a payout, that's got to be your client's decision. He can either agree to that at this point and incur the cost, or we'll just split it at the 43 and the tax consequences will be what they are.
HUSBAND'S ATTORNEY: The QDRO, if we submit a QDRO, and the plan administrators can do what we want and divide it that way, they'll set her up with a separate fund and then she can do what she wants to with hers and he can do what he wants to with his; is that correct?

To the extent that the husband suggests that his attorney's final statements with regard to the QDRO were at odds with his express wishes, it is of no aid to him. In a civil proceeding, a client is bound by statements of his or her attorney made in open court when the statements are made in the client's presence and are not denied by the client. *In the Interest of M. O.*, 233 Ga. App. 125, 128 (1) (503 SE2d 362) (1998); *N.A.A.C.P. v. Pye*, 96 Ga. App. 685, 686 (101 SE2d 609) (1957). Even though the husband was vocal throughout the discussion about the QDRO, he voiced no opposition to his attorney's final comments rejecting the use of a QDRO, or to the stated summation of the matters to which the parties did agree and so stipulate, which did not include the QDRO.

2. The jury awarded the wife a lump sum alimony award of $16,000, and the parties plainly stipulated that such award would be paid by the husband by August 1, 2005. Accordingly, the decree provided for a lump sum alimony payment of $16,000 to the wife on or before August 1, 2005; however, the husband complains that inasmuch as the decree was not signed by the trial court until December 23, 2005,[3] the trial court erred in providing a date for payment of alimony that occurred prior to the signing of the decree, resulting in an "impossible alimony payment date."[4] But the complaint is unavailing. The husband states that even though the delay rendered the stipulated payment date impossible, he has nevertheless tendered the alimony, and he does not claim any harm thereby. To have reversible error, there must be harm as well as error, and the lack of harm renders the enumeration of error without merit. *Moxley v. Moxley*, 281 Ga. 326 (638 SE2d 284) (2006).

3. The husband and wife agree that the decree contains an incorrect date of July 17, 2005, for the division of husband's retirement account, and that the correct date should have been June 17, 2005. Inasmuch as the decree contains this clerical error, the case is

---

WIFE'S ATTORNEY: That's correct. But there is a $1000 cost to do that. There is no cost to just having it paid to her. And, [husband's attorney], you could have argued it to the jury to do it by a qualified domestic relations order, and you didn't choose to do that. I'm offering it to you after the case is over. And I didn't mean to cause this much stir doing it.

HUSBAND'S ATTORNEY: Well, I didn't think she was entitled to anything myself, but, you know, that's —

WIFE'S ATTORNEY: Then let's just leave the jury verdict as it is and we don't have a stipulation as to the payment. If we don't have a stipulation as to the QDRO, we don't have a stipulation. Let's just let the jury verdict stand the way it is.

[3] The decree was filed the same day.

[4] The husband acknowledges that with regard to the stipulated date, the trial court had called for a proposed decree to be submitted in two weeks of the trial, but that it was not submitted until six months later, which would explain the delayed date in its signing and issuance.

remanded to the trial court solely for the correction of this error in the decree. *Lockett v. State*, 257 Ga. App. 412, 414 (4) (571 SE2d 192) (2002).

*Judgments affirmed and case remanded with direction. All the Justices concur.*

DECIDED JANUARY 22, 2007.

*David S. Walker, Jr.,* for appellant.
*Michael J. Anderson,* for appellee.